**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JOHN MILTON,

      Plaintiff,

v.                               CASE NO.  4:12cv384-RH/CAS

JOSEPH MILLIGAN et al.,

      Defendants.

_____/


## ORDER DENYING THE FOUNDATION'S MOTION TO DISMISS


This case presents questions under 42 U.S.C. §§ 1981 and 1982, civil-rights

statutes originally enacted soon after the Civil War.

For § 1981, which explicitly prohibits racial discrimination in contracting

and implicitly prohibits retaliation for asserting rights under the statute, the

questions include the following.  When an employee claims that his employer has

discriminated against him based on race, thus violating § 1981, does the employer

violate the § 1981 antiretaliation principle when it refuses to lease property to an

individual who supported the employee's claim?  And if so, may the individual

obtain relief under § 1981?  The answer to both questions is yes.

For § 1982, which explicitly prohibits racial discrimination in selling or leasing property and implicitly prohibits retaliation for asserting rights under the statute, the question is whether a lessor violates the statute by terminating an individual's lease based on the individual's association with and support for a person of a different race. Again the answer is yes.

This order denies a motion to dismiss asserting the contrary.

## I

A district court should grant a motion to dismiss for failure to state a claim unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a motion to dismiss, the complaint's factual allegations, though not its legal conclusions, must be accepted as true. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here the relevant pleading is the first amended complaint. Its allegations include the following. The plaintiff John Milton leased a plantation from the defendant Geraldine C. M. Livingston Foundation under two separate agreements. The leases automatically renewed unless a party gave advance notice to the contrary. A Foundation employee, Tevon Jones, complained that the Foundation had discriminated against him based on race. Mr. Jones is African American. In

presuit mediation on Mr. Jones's potential § 1981 claim, Mr. Milton supported Mr. Jones. Mr. Jones's employment for the Foundation ended, and Mr. Milton hired him, expecting him to work for Mr. Milton on the plantation grounds. The Foundation gave Mr. Milton notice terminating his leases, and did it both in retaliation for Mr. Milton's support of Mr. Jones's § 1981 claim, and because Mr. Milton hired and otherwise associated with Mr. Jones, including on the property.

Mr. Milton filed this action asserting claims under § 1981, § 1982, and state law. The Foundation has moved to dismiss, asserting that Mr. Milton has failed to state a claim under § 1981 or § 1982 and that, upon dismissal of those claims, the court should decline to exercise supplemental jurisdiction over the state-law claims.

## II

Among other things, § 1981 gives each person "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." *Id.* § 1981(a). The statute applies to private as well as public discrimination. *Id.* § 1981(c). And although the Supreme Court originally ruled to the contrary, Congress amended the statute to make clear that it prohibits discrimination in the performance of a contract, not just discrimination in connection with initial entry into the contract. *See id.* § 1981(b). Mr. Jones's claim of racial discrimination in employment thus came within § 1981. The Foundation does not assert the contrary.

The statute does not explicitly speak to retaliation. But as is settled, the statute does prohibit retaliation. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008); *Webster v. Fulton County*, 283 F.3d 1254, 1257 & n.6 (11th Cir. 2002). Again, the Foundation does not assert the contrary.

The Foundation says, though, that the antiretaliation principle does not go so far as to protect Mr. Milton's leases—separate contracts not subject to the original discrimination complaint.

The Supreme Court has definitively construed the Title VII antiretaliation provision as prohibiting any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). The Court adopted this standard based not only on the statutory language but also based on the Court's "understanding of the antiretaliation provision's purpose." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011). The purposes of the Title VII antiretaliation provision and the § 1981 antiretaliation principle are identical or, at least, not meaningfully distinguishable. The better view is that the § 1981 antiretaliation principle prohibits any action that "well might have dissuaded a reasonable [contracting party] from making or supporting a charge of discrimination." Refusing to renew Mr. Milton's leases easily qualifies.

This leaves for analysis an additional question. Is Mr. Milton—a white person who was not a party to Mr. Jones's contract—a person who may assert a § 1981 claim? Again, the Supreme Court has addressed this issue in analogous circumstances, under Title VII. In *Thompson*, an employee complained of gender discrimination, and the employer fired the employee's fiancé. The Court held that the fiancé could assert a Title VII retaliation claim. Analogizing to the Administrative Procedure Act, the Court held that the antiretaliation provision is enforceable by any person who

> "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990). We have described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399–400 (1987).

*Thompson*, 131 S. Ct. at 870. This was the Court's analysis of Title VII, which explicitly authorizes a civil action by a "person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1). But in light of the Court's reliance on the Administrative Procedure Act and general standing principles—and in the absence of other guidance in § 1981—the better view is that the same analysis applies here.

In applying this test in *Thompson*, the Supreme Court looked not just to the zone of interests protected by the underlying prohibition on gender discrimination, but to the zone of interests protected by the antiretaliation provision. The same

approach here brings Mr. Milton within the protected zone of interests. Mr. Milton is white, but the statute protects whites as well as nonwhites from prohibited discrimination in contracting. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-88 (1976). More fundamentally, Mr. Milton had contracts with the Foundation—the leases—and engaged in protected conduct, supporting Mr. Jones's § 1981 claim. A person who himself has a contract with the party accused of discrimination in contracting, and who himself engages in protected conduct directed toward that same party, is within the zone of interests protected by the antiretaliation principle. And if two different contracts are involved—one that was the subject of the protected conduct, and a different contract that was terminated in retaliation—the result is the same. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (upholding a § 1981 claim by a person whose employment contract was terminated in retaliation for his complaint about discrimination in connection with a different employee's contract).

The result makes sense. The Supreme Court has held that Congress intended § 1981 to include an antiretaliation principle, so that those who oppose racial discrimination in contracting are protected from retaliation in contracting. The principle must surely protect whites who oppose discrimination as well as African Americans who do so. Progress toward racial equality has come through the efforts of African Americans, but support from whites has been important as well.

Congress could not have intended to authorize a defendant to terminate a contract with a white person in retaliation for the white person's support of an African American's claim of racial discrimination in contracting.

The motion to dismiss the § 1981 claim is unfounded.

### III

The result is the same for the § 1982 claim. The statute provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982. Mr. Milton is white. But the statute protects whites as well as nonwhites from racial discrimination. Addressing the analogous language in § 1981, the Supreme Court has said that the statute's reference to whites indicates that the prohibited discrimination is racial, not that whites are unprotected. *See McDonald*, 427 U.S. at 287.

Moreover, Mr. Milton's assertion is not that the Foundation terminated the leases because Mr. Milton is white. The assertion is that the Foundation terminated the leases because Mr. Milton associated with and hired Mr. Jones, who is African American. Protecting Mr. Jones's ability to go on the property is squarely at the core of § 1982. If, as Mr. Milton has alleged, the Foundation terminated his leases because he associated with and employed Mr. Jones to work on the property, the termination violated

§ 1982.  *See Walker v. Pointer*, 304 F. Supp. 56 (N.D. Tex. 1969) (Hughes, J.); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511-512 (6th Cir. 2009) (upholding a claim for associational discrimination under § 1981); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (same).

Mr. Milton also says in the amended complaint that his own assertion of the § 1982 retaliation claim was protected conduct, so that terminating the leases in response to this lawsuit ran afoul of the § 1982 antiretaliation provision.  This allegation too is sufficient to withstand the motion to dismiss.  In short, Mr. Milton has stated a § 1982 claim on which relief can be granted.

IV

Mr. Milton may or may not be able to prove his allegations.  But the allegations sufficiently state a claim for relief under §§ 1981 and 1982.  Accordingly,

IT IS ORDERED:

The Foundation's motion to dismiss, ECF No. 14, is DENIED.

SO ORDERED on March 5, 2013.

s/Robert L. Hinkle_____
United States District Judge